IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN D. VOTH,

      Plaintiff,                No. CIV S-04-2103 LKK GGH P

    vs.

T. ALBRIGHT, et al.,

      Defendants.      <u>ORDER</u>

_____/

      Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  Pending before the court are: 1) plaintiff's motion to compel (further) discovery, filed on April 5, 2006, to which defendants filed their opposition on April 25, 2006[1]; 2) plaintiff's motion to compel answers to requests for admissions and interrogatories, filed on May 8, 2006, to which

\\\\\

\\\\\

---

[1] Defendants indicate that their opposition was due on April 24, 2006.  By letter filed on April 25, 2006, counsel for defendants indicates that the opposition, which was to be filed on April 24, 2006, was scanned in the next morning due to an oversight.  Plaintiff opposes consideration of the opposition because, inter alia, he is held to deadlines, counsel is more experienced and has more resources, etc.  The court, however, will deem the filing timely because defendants acknowledge their mistake, make clear that it was unintentional, the delay in filing involved, at most, a matter of hours and plaintiff does not make an adequate showing of prejudice to himself if the opposition is considered.

1  defendants filed their amended opposition on May 11, 2006;[2] 3) plaintiff's motion for leave to

2  file a second amended complaint, filed on May 8, 2006, to which defendants filed their

3  opposition on May 15, 2006; and 4) plaintiff's renewed motion for appointment of counsel, filed

4  on September 20, 2006.

5  Motion for Leave to File Second Amended Complaint

6          The court will consider first plaintiff's motion for leave to file a second amended

7  complaint.  This action was originally filed on October 6, 2004.  Defendant Corrie was dismissed

8  as was a claim of excessive force regarding a K-9 police dog, but plaintiff was granted leave to

9  amend, by Order, filed on February 11, 2005, and he filed a first amended complaint.  Presently,

10 this matter proceeds on plaintiff's first amended complaint, filed on March 9, 2005, against three

11 Sacramento County Sheriff's Deputies: Timothy Albright, Timothy Wetzel and David Corrie.

12 Plaintiff claims violations of his Fourth Amendment[3] constitutional rights due to the alleged

13 excessive force used by Sacramento County Sheriff's Deputies Albright, Wetzel and Corrie in a

14 vehicle pursuit and arrest on October 3, 2003.

15         On October 3, 2003, at around 12:30 a.m., plaintiff alleges that, in an attempt to

16 evade arrest because he had allowed his vehicle registration to expire and was certain his

17 Chevrolet Blazer would be impounded, he evaded police when a white police vehicle activated

18 emergency lights for about ten minutes "until the 'PIT' maneuver was performed by the pursuit

19 vehicle," forcing plaintiff to a stop on a residential lawn.  First Amended Complaint (FAC), pp.

20 1-2.  Plaintiff attempted to back the vehicle onto the street at which point another police car

21

22      [2] Defendants filed both an opposition and an amended opposition, on May 11, 2006.  The

23 court will consider only the later filed and superseding amended opposition.

24      [3] Although plaintiff states that he is alleging violations of his rights under the Eighth
   Amendment, because plaintiff's allegations arose in the context of an arrest, and not while he
   was an incarcerated prisoner, it is his rights under the Fourth Amendment that are implicated.

25 Graham v. Connor, 490 U.S. 386, 388, 394,109 S. Ct. 1865, 1867-1868, 1871 (1989), citing

26 Tennessee v. Garner, 471 U.S. 1, 7-22, 105 S. Ct. 1694, 1699-1707 "(claim of excessive force to
   effect arrest analyzed under a Fourth Amendment standard)."

1   rammed the passenger side door, preventing his efforts.  FAC, p. 2.

2         Plaintiff then exited the Blazer, taking several steps away from the vehicle, when

3   a K-9 police dog grabbed plaintiff by his upper right thigh, the force of which caused plaintiff to

4   go face first onto the paved street.  Id.  Plaintiff remained motionless while the police dog

5   continued to bite and tug at his upper thigh.  Id.  About thirty seconds later, plaintiff was

6   surrounded by five sheriff's deputies.  Id.  Defendant Sacramento County Deputy Sheriff

7   Timothy Wetzel jammed his knee into plaintiff's back and began striking plaintiff on the back of

8   his head with a metal flashlight, approximately eighteen inches long.  Id.  Plaintiff made eye

9   contact with defendant Wetzel; plaintiff screamed out in pain because the blows were so

10  excruciating; blood ran down plaintiff's back and face.  Id.  Defendant Wetzel grabbed

11  plaintiff's right arm, pulled it around to his back and fastened handcuffs so tightly that plaintiff

12  screamed: "Please stop."  FAC, pp. 2-3.  The police dog continued to bite and rip at plaintiff's

13  upper thigh after the handcuffs were secured.  FAC, p. 3.

14        Immediately, four other sheriff's deputies began kicking and punching plaintiff on

15  his torso and back, while the police dog continued his biting on plaintiff's upper thigh.  Id.

16  Defendant Sacramento County Deputy Sheriff Timothy Albright was kneeling to the right of the

17  dog, holding the dog's mid-section with both arms, pulling back and forth, tearing at plaintiff's

18  thigh, coaxing the dog to continue its assault, saying: "Good Boy, Good Boy!!"  Id.  Plaintiff

19  made eye contact with defendant Albright, begging him to order the dog to stop biting him to no

20  avail; instead defendant Albright responded by smiling as he continued to excite the dog.  Id.

21  Only after one of the officers yelled "Blood!  Blood!" did defendant Albright order the dog to

22  "release" plaintiff.  Id.  At this point, the kicking and punching also stopped.  Id.

23        However, defendant David Corrie "stepped up to plaintiff's head and did a

24  football style drop-kick to plaintiff's head."  Id.  Before plaintiff lost consciousness, he was able

25  to make eye contact with this defendant as well.  Id.  Plaintiff was able to obtain color

26  photographs that the Sacramento County Sheriff's Dept. took of him while he was unconscious

1    and bleeding condition on the ground.  FAC, pp. 3-4.  Plaintiff does not set forth the relief he

2    seeks by his complaint.  In his pretrial statement, filed on August 7, 2006, plaintiff states that he

3    seeks money damages and injunctive relief.  Plaintiff's pretrial statement, p. 3.  However, he

4    specifies only that he seeks $30,000 in damages should this action proceed upon his first

5    amended complaint; on the other hand, should he be allowed to proceed on his proposed second

6    amended complaint, with the naming of additional defendants, plaintiff seeks $50,000.

7    Motion for Leave to Amend the First Amended Complaint

8              In his motion for leave to amend, plaintiff notes that in his first amended

9    complaint he stated that there were five deputy sheriffs involved.  Motion, p. 1.  He now

10   believes, but that at the time of filing the first amended complaint he was only able to identify

11   defendants Albright, Wetzel and Corrie.  Motion, pp. 1-2.  He was able to identify those three

12   based on information from his criminal trial and his memory.  Motion, p. 2.  However, he has

13   been able to determine the name of other officers involved in his arrest through discovery and

14   believes now that there were three more defendants who actively participated in the excessive

15   force to which he claims to have been subjected.  He includes as exhibits to his motion and

16   proposed second amended complaint, his first amended complaint as Exhibit A; a portion of a

17   Sacramento County Sheriff's Department Continuation Report evidently written by defendant

18   Albright, which states that Officer Leon accompanied "the suspect," apparently plaintiff to the

19   U.C. Davis Medical Center, as Exhibit B;[4] a prescription activity report, apparently signed by D.

20   Leon for some sort of wound in October of 2003, also part of Exhibit B; also, part of Exhibit B is

21   a portion of a Sacramento County Sheriff's Department Continuation Report identifying

22   defendant Wetzel as an investigating officer, wherein Deputy Leon is identified as having

23   accompanied plaintiff to the U.C. Davis Medical Center for treatment; in the last page of Exhibit

24   _____

25           [4] This report also references a vehicle pursuit, on October 2, 2003, by the Sacramento
     County Sheriff's Department Special Enforcement Detail, wherein the vehicle pursued was
26   abandoned, but the suspect fled and was never located.

1   B, plaintiff includes a copy of his own Sacramento County Sheriff's Department citizen

2   complaint form wherein he describes the incident at issue and identifies by name three officers,

3   Albright and Wetzel (two of the defendants named in the first amended complaint).  Curiously,

4   he also included an officer named Leon, whom he did not name in the first amended complaint,

5   and does not include Corrie, whom he did.  In Exhibit C, plaintiff includes a page from the

6   continuation report by Wetzel, which identifies both Deputies Albright and Gooler as Sheriff's

7   canine units as being in pursuit, evidently of plaintiff.  The report also indicates that Officer

8   Wetzel believed that it was possible that the person he was pursuing was the individual who had

9   earlier eluded police in a vehicle pursuit, as their descriptions matched.  See Footnote 4.  The

10  portion of Wetzel's report included as Exhibit D names both Deputies Long and Corrie (or

11  begins to on the page provided) as entering the pursuit.  At Exhibit E, plaintiff includes a portion

12  of Albright's report indicating that it was unknown whether or not plaintiff was the vehicle driver

13  who had been pursued earlier on that same evening (plaintiff was pursued just after midnight on

14  10/03/03).

15          In his proposed second amended complaint, plaintiff adds as defendants Deputies

16  D. Leon, Long and Gooler.  He incorporates by reference the first amended complaint (Exhibit

17  A), and sets forth the relief he seeks, injunctive relief and compensatory and punitive damages, in

18  this version, although again the injunctive relief sought is not specified.  As to defendant Leon,

19  plaintiff alleges that based on his own memory and newly discovered evidence, including police

20  reports, he is "positive" that this individual witnessed and actively participated in the arrest and

21  the injuries plaintiff sustained.  Proposed second amended complaint, p. 7.  On this same basis,

22  he now can name Sheriff's Deputy Gooler as one of the five who surrounded him and one of the

23  four other deputies who began kicking and punching him, referenced in the first amended

24  complaint.  Id.  Plaintiff makes the same allegations as to Sheriff's Deputy Long.  Id., at 8.

25          Of course, while the newly named defendants would make a total of six, rather

26  than five, plaintiff asserts that by his first amended complaint he meant there were at least five

5

1   deputy sheriffs involved and that his updated information is more accurate.

2         Defendants oppose the filing of a second amended complaint, pointing out that

3   this action was initially filed on October 6, 2004, and defendants answered the March 9, 2005,

4   first amended complaint on May 17, 2005.  Opposition (Opp.), p. 1.  Defendants argue that

5   plaintiff seeks leave to amend after discovery has closed, more than a year after the complaint

6   was originally filed and more than two and a half years after the incident at issue.  Opp., p. 2.

7         However, this is not precisely accurate.  As defendants themselves observe, there

8   have been two extensions of time for completion of discovery, subsequent to the initial March

9   10, 2006, discovery cut-off date set in the December 1, 2005, scheduling order.  Opp., pp. 1-2.

10  The first extension of time was granted on the parties' stipulation because plaintiff refused to

11  allow his deposition to go forward on the original date noticed for January 9, 2006, because he

12  had filed a motion for appointment of counsel which was pending.   The discovery deadline was

13  extended until April 9, 2006, so that defendants would have an opportunity to depose plaintiff

14  after the request had been ruled upon.  The court denied plaintiff's request for appointment of

15  counsel by order filed on February 14, 2006.   The court, by order filed on April 6, 2006, partially

16  granted plaintiff's request for a second extension of the discovery deadline, allowing the

17  discovery cut-off date to be moved until May 9, 2006, and stating that no further extensions of

18  time would be granted.

19        Plaintiff filed his motion and proposed second amended complaint in this court on

20  May 8, 2006 (and by application of the mailbox rule, on May 3, 2006).  As noted, the discovery

21  deadline had been extended until May 9, 2006.  While plaintiff certainly pushed the envelope, his

22  motion was not brought beyond the newly extended deadline.  Defendants state that they

23  responded to plaintiff's discovery requests, propounded in October, November and December of

24  2005, in November and December of 2005, and in January of 2006.  Opp., p. 1.  Plaintiff does

25  not make clear why he could not have sought leave to amend earlier since he bases his motion

26  largely on what he has gleaned from discovery responses, and on the face of it, it would appear,

1  even given the discovery disputes that remain, that plaintiff had the material on which he bases

2  his motion for leave to amend as of January of 2006.

3  Defendants argue that allowing plaintiff to proceed on a newly amended

4  complaint at this point will lead to three types of prejudice: 1) the burden of additional future

5  discovery; 2) a delay in the resolution of this action; 3) prejudice to new defendants who may

6  have no notice or knowledge of this action.  Opp., p. 3.  Defendants cite Zenith Radio Corp. v.

7  Hazeltine Research, Inc., 401 U.S. 321, 330-31, 97 S. Ct. 795 (1971), for the principle that the

8  potential prejudice to the opposing party is the most important factor to consider.

9  The Federal Rules of Civil Procedure provide that a party may amend his or her

10  pleading:

11  once as a matter of course at any time before a responsive pleading
is served....   Otherwise a party may amend the party's pleading
12  only by leave of court or by written consent of the adverse party;
and leave shall be freely given when justice so requires.

13

14  Fed. R. Civ. P. 15(a).

15  It is a settled principle that granting leave to amend the pleadings pursuant to Rule

16  15(a) is within the court's discretion.  Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S.

17  321, 330, 97 S. Ct. 795, 802 citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230

18  (1962).  The mandate of Rule 15(a) that leave to amend is to be "freely given when justice so

19  requires" is to be heeded.  Foman v. Davis, 371 U.S. at 182, 83 S. Ct. at 230.  Factors for the

20  court to consider in determining whether to permit an amendment include "undue delay, bad faith

21  or dilatory motive" on the part of the moving party, "undue prejudice to the opposing party," or

22  "futility of amendment."  Id.

23  Defendants are correct that allowing plaintiff to proceed on an amended complaint

24  with additional parties will delay resolution of this action, especially as the current parties have at

25  this point, but after the filing of the motion for leave to amend, filed their pretrial statements.

26  There is no doubt that the newly named defendants are prejudiced somewhat by allowing

7

1  plaintiff to proceed against them at this point and discovery will have to be re-opened at least as

2  to the new defendants.  However, there is little point in permitting discovery in the first plaintiff

3  if a party may not be allowed to use the results thereof to fashion more complete allegations.

4  Thus, although it is true that plaintiff does not offer a compelling explanation for why he could

5  not have sooner moved for an amended pleaded, at least by two or three months, the court will

6  allow plaintiff to proceed on an amended complaint with the additional defendants in light of the

7  liberal pleading rules of federal court (see Fed. R. Civ. P. Rules 8, 15), rules which should be

8  even more liberally construed in the context of actions brought by pro se litigants.  Haines v.

9  Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-96 (1972) (pro se pleadings held to a less

10  stringent standard than those drafted by lawyers)  However, plaintiff may be confused in

11  dropping defendant Corrie, and the court is unwilling to go through another amendment process

12  if it was never plaintiff's intent to drop Corrie in the first place.  Plaintiff will be given twenty

13  days leave to file a *final* amended complaint naming *all* desired defendants.  Plaintiff is cautioned

14  not to name defendants at this point where he is merely guessing that they may have had

15  something to do with his alleged excessive force incident.  In light of the court's granting of the

16  motion to file a second amended complaint, the undersigned will vacate the pretrial conference

17  and trial dates set in the December 1, 2005, scheduling order.

18  Motions to Compel

19                    First Motion

20                    Plaintiff served a first set of requests for production upon defendants Albright,

21  Wetzel and Corrie.  Motion to Compel, p. 2.  Dissatisfied with the responses as to certain

22  requests, plaintiff amended the requests at issue in a second request for production of documents,

23  served on November 27, 2005.  MTC, p. 3.  Plaintiff contends that defendants objections to his

24  request on the grounds that they are irrelevant, burdensome or privileged are meritless.  Id.  The

25  requests that plaintiff identifies as being at issue are request nos. 1, 5, 6, 7, and 12.  MTC, p. 5.

26  \\\\\

1           As to request no. 1 in his first set of requests for production, plaintiff sought

2    "[a]ny and all reports written by Timothy Albright that concerns any involvement in plaintiff's

3    arrest by himself or (K-9) Stazzo," which he amended in his second set of requests to: "[a]ny and

4    all reports written by Timothy Albright relating to this action, and the actions of his K-9 partner,

5    regarding the incident, or cause of arrest of plaintiff John D. Voth on October 3, 2003."

6    Although defendants objected to the request in the first set on the grounds of, irrelevance,

7    overbreadth, ambiguity, in response to the amended request, defendants stated, in addition to

8    referencing their prior objections: "[s]ee arrest report previously produced."  In their opposition,

9    defendants aver that this is the only documentation that is responsive to the request.  Opposition

10   (Opp.), p. 6.  The court will order no further production as defendants cannot be compelled to

11   produce documents that do not exist.

12          In request no. 5, set one, plaintiff asked that defendants "[p]roduce any Internal

13   Affairs/Complaint Statements and Findings regarding plaintiff's injuries relating to his arrest on

14   October 3, 2003," which plaintiff amended to "[a]ny Internal Affairs complaints made by

15   plaintiff specifically."  Although initially objecting to the first request based on confidentiality

16   and privacy rights of the defendants, the second response added that: "[d]efendants will comply

17   with this request to the extent documents are not protected by privilege or are confidential."  As

18   to the response to the amended request, defendants contend that plaintiff's own complaint was

19   sought and has been produced and that no other complaints are responsive to the request.  Opp.,

20   p. 6.  No further production can be compelled to the request as amended.

21          In request no. 6, plaintiff sought production of "any Internal Affairs/Complaint

22   Statements and Findings against any of the defendants regarding their involvement in the

23   plaintiff's arrest on October 3, 2003," to which defendants, in their second modified response,

24   while incorporating by reference their prior objections "on constitutional, state and common law

25   rights of privacy" grounds as well as on the basis that the request sought material "of a

26   confidential nature according to the policies and procedures of" Sacramento County, asserted that

they "will comply with this request to the extent the documents are not protected by privilege or are confidential."  Defendants provided the same response to plaintiff's request no. 7, wherein plaintiff sought initially "any written or recorded statements with the Internal Affairs by defendants or plaintiff or any other related parties regarding their (Internal Affairs) investigation of plaintiff's complaint," which plaintiff amended to "Related parties and agencies including the defendants' employer, regarding plaintiff's initial complaint of Excessive Use of Force made with or to Internal Affairs or their relative agent or agencies."

As to request no. 6, defendants aver that plaintiff's own complaint and the findings of the Internal Affairs investigation prompted by his complaint was produced to him, but that statements of the officers, investigators or third parties were not produced pursuant to privacy, confidentiality and privilege objections. Opp., 6.  Defendants assert that request no. 7, originally and as amended, is duplicative of request no. 6.  The court agrees and plaintiff's motion as to request no. 7 will be denied.  However, as set forth in the discussion, plaintiff's request for all materials generated in the Internal Affairs investigation will be granted pursuant to a required in cameras review and protective order, if necessary.

In request no. 12, plaintiff sought "[a]ny and all grievances, complaints, or other documents received by the defendants or their agents at Sacramento Sheriff's Department concerning mistreatment of persons arrested by defendants Albright, Wetzel, or Corrie, and any memoranda, investigative files, or other documents created in response to such documents, since they became employees of said same department."  Defendants contend that the request is overbroad in seeking documents from the date the officers were first employed because, pursuant to Cal. Penal Code § 832.5(b),[5] the Sheriff's Department is only required to keep such records for a period of five years.  Opp., pp. 6-7.  Defendants objected in their response to this request on grounds of relevancy, privacy and confidentiality, and maintain that their production of plaintiff's

---

[5] This subsection mandates that complaints and reports or findings relating citizens' complaints against personnel "shall be  retained for a period of at least five years."

1   own complaint was the appropriately produced response.  Opp., p. 7.   Defendants correctly

2   contend that the remaining dispute is with respect to plaintiff's request for production of

3   documents concerning the Internal Affairs investigation and with his request concerning claims

4   of excessive force for the five-year period preceding plaintiff's complaint.  Id.  As to both request

5   nos. 6 and 12, defendants Albright, Wetzel and Corrie , see discussion below, will be directed to

6   submit documents responsive to them to the court for an in camera review.

7                    Discussion

8                    Any party has the right to discovery of "any matter, not privileged, that is relevant

9   to the claim or defense of any party...." ; thus, the scope of discovery under Fed. R.Civ.P.

10  26(b)(1) is broad.  Discovery may be sought of relevant information not admissible at trial "if the

11  discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Id.

12  The court, however, may limit discovery if it "....is unreasonably cumulative or duplicative," or

13  can be obtained from another source "that is more convenient, less burdensome, or less

14  expensive; or if the party who seeks discovery "has had ample opportunity by discovery ...to

15  obtain the information sought"; or if the proposed discovery is overly burdensome.  Fed. R.Civ.P.

16  26(b)(2)(i)(ii) and (iii).

17                   Plaintiff argues that the production/information he seeks, by request nos. 6 and 12,

18  is relevant, even necessary, to his claim, that to be barred from access to it will unfairly prejudice

19  him and that disclosure of the documents he seeks will serve the public interest.  MTC, p. 18.  He

20  also recognizes that there are legitimate privacy concerns and "welcomes a protective order...."

21  Plaintiff's objection to filing of defendants' opp. (Reply), p. 3.

22                   Defendants recognize that state law is not determinative of whether documents are

23  discoverable under federal law but note the confidentiality of the investigation and complaint

24  histories of the defendants under state law, citing Cal. Penal Code § 832.7[6] and Cal. Evid. Code §

25  _____

26          [6] Cal. Penal Code § 832.7 sets forth the confidentiality of  custodial officers' personnel
    records and the method of any discovery/disclosure of  disciplinary investigations.  It is clear

1043.[7]  Opp., p. 7.  Defendants also rely on Cal. Evid. Code § 1040,[8] as well as the right to privacy both of third parties and themselves, under the state and federal constitutions and on the basis of privilege, including government and official information privileges, as protecting the information at issue.  Opp., pp. 7-11.

Defendants also assert the official information privilege under the federal common law.  Opp., p. 8.  Defendants contend that disclosure of citizen complaints or Internal Affairs files unrelated to this incident would reveal information about those not party to this action and that permitting disclosure of Internal Affairs files would not be in the public interest because it might inhibit the officers' candor during the investigatory process.  Id.

Federal privilege law is controlling in this federal civil rights litigation.

> This court has discussed in previous cases at length whether federal or state law controls the assertion of privilege depending on the federal or state nature of the substantive claims. Pagano v. Oroville Hospital, 145 F.R.D. 683, 687 (E.D.Cal.1993). The rule is as follows: if federal claims are asserted, federal law controls; if state claims are asserted (as in a diversity action), state law controls; in a case with mixed federal and state claims, federal law is controlling. Because plaintiff has asserted a 42 U.S.C. § 1983 claim, federal law is controlling.  As discussed in Pagano, 145 F.R.D. at 688, however, the fact that federal law controls does not rule out application of state law where it is not inconsistent with the federal law on the subject, and state law is persuasive in the context of the dispute.

Doubleday v. Ruh, 149 F.R.D. 601, 610 (E.D.Cal. 1993).

\\\\\

from this section that discovery of the reports, statements, etc., will normally be granted.

[7] This provision sets forth the state procedure for discovery or disclosure of the personnel records of peace or custodial officers, or of complaints against such officers.

[8] Cal. Evid. Code § 1040(a) defines "official information" as "information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made."  Under § 1040(b)(2) in weighing whether the necessity of maintaining the confidentiality of the information "outweighs the necessity of disclosure in the interest of justice....", "the interest of the public entity as a party in the outcome of the proceeding may not be considered."

1      In considering this motion to compel, the court is mindful that privileges are

2 narrowly construed, because they impede the full and fair discovery of the truth, <u>Eureka Financial</u>

3 <u>Corp. v. Hartford Acc. and Indemnity Co.</u>, 136 F.R.D. 179, 183 (E.D. Cal. 1991), and that the

4 party asserting the privilege has the burden to establish its applicability is an undisputed

5 proposition, <u>see</u>, <u>e.g.</u>, <u>United States v. O'Neill</u>, 619 F.2d 222, 227 (3rd Cir. 1980).

6 The Supreme Court has long noted that privileges are not favored:

7          The common-law principles underlying the recognition of
           testimonial privileges can be stated simply. "'For more than three
8          centuries it has now been recognized as a fundamental maxim that
           the public . . . has a right to every man's evidence. When we come
9          to examine the various claims of exemption, we start with the
           primary assumption that there is a general duty to give what
10         testimony one is capable of giving, and that any exemptions which
           may exist are distinctly exceptional, being so many derogations
11         from a positive general rule.'"

12 <u>Jaffee v. Redmond</u>, 518 U.S. 119, 116 S. Ct. 1923, 1928 (1996) (<u>citing</u> <u>United States v. Bryan</u>,

13 339 U.S. 323, 331, 70 S. Ct. 724, 730, 94 L. Ed. 884 (1950) (<u>quoting</u> 8 J. Wigmore, Evidence §

14 2192, p. 64 (3d ed.1940)).

15      "To determine whether the information sought is privileged, courts must weigh

16 the potential benefits of the disclosure against the potential disadvantages. If the latter is greater,

17 the privilege bars discovery." <u>Sanchez v. City of Santa Ana</u>, 936 F.2d 1027, 1033-34 (9th Cir.

18 1990); <u>see</u> <u>also</u> <u>Martinez v. City of Stockton</u>, 132 F.R.D. 677 (E.D.Cal. 1990). "The balancing

19 approach of the Ninth Circuit is mirrored in this and other courts' previous determinations that a

20 balancing test is appropriate when the disclosure of law enforcement files in a civil action is at

21 issue." <u>Doubleday v. Ruh</u>, 149 F.R.D. 601, 609 (E.D.Cal. 1993).

22      Defendants' position, in essence, is that any grievance lodged against defendant

23 sheriff's deputies and any and all investigations or disciplinary proceedings contained within a

24 jail officer's personnel file are privileged and may not be disclosed. Clearly, such a blanket and

25 unexamined restriction upon access to information that could prove highly relevant to plaintiff

26 herein is not justifiable, although defendants have a legitimate concern about releasing personnel

13

1   information, particularly into a prison population.

2          Plaintiff requests that the documents be produced after an in camera review.

3   Defendants have also sought, as an alternative to a denial of plaintiff's motion, an in camera

4   review of the records requested by plaintiff to determine the relevance, if any, of such records.  In

5   order to apply the balancing test favored by the Ninth Circuit before ruling on disclosure, the

6   court must review the documents at issue in camera.

7          **The court, therefore, will direct defendants to produce, within thirty days, to**

8   **the undersigned any and all records of any complaint or grievance alleging excessive force**

9   **by any of the defendants, Albright, Wetzel, and Corrie, maintained in the personnel**

10  **records or files of each defendant.  With respect to the Internal Affairs investigation of the**

11  **incident giving rise to this cause of action, defendants Albright, Wetzel and Corrie must**

12  **produce, within thirty days, the record of that investigation and any testimony, report and**

13  **findings involving the participation or involvement of any or all of them in the incident.**

14  **Personal data, such as the defendants' social security numbers and home addresses, should**

15  **be redacted from any documents prior to submission to the court for its in camera review.**

16          Second Motion

17          As to plaintiff's second motion to compel discovery, filed on May 8, 2006,

18  seeking responses to interrogatories and requests for admission, although it was filed within the

19  extended deadline for completion of discovery, defendants are correct that plaintiff did not serve

20  the discovery requests at issue early enough for defendants to have had an adequate opportunity

21  to respond.   The discovery order, filed on June 16, 2005, granted the parties 45 days to respond

22  to discovery requests. The December 1, 2005, scheduling order directs that discovery requests

23  not be served later than 60 days prior to the close of discovery.  Plaintiff served the requests at

24  issue on April 23, 2006, as defendants assert and plaintiff does not dispute.  Discovery closed on

25  May 9, 2006.  The court will deny the second motion to compel, regarding untimely discovery

26  requests served upon defendants Albright, Wetzel and Corrie.

1  Request for Appointment of Counsel

2       Plaintiff once again seeks appointment of counsel.  Plaintiff has previously been

3  denied appointment of counsel.  See Order, filed on February 15, 2006.  His request for

4  reconsideration of that order was denied as untimely by the district judge.  See Order, filed on

5  March 30, 2006.  As plaintiff has previously been informed, the United States Supreme Court has

6  ruled that district courts lack authority to require counsel to represent indigent prisoners in

7  § 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In certain

8  exceptional circumstances, the court may request the voluntary assistance of counsel pursuant to

9  28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v.

10 Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  In this case, as plaintiff has been advised,

11 the court does not find the required exceptional circumstances.  Plaintiff's renewed request for

12 the appointment of counsel will therefore be denied.

13      Accordingly, IT IS HEREBY ORDERED that:

14      1.  Plaintiff's motion for leave to file an amended complaint is granted; plaintiff

15 shall file a final amended complaint within twenty days from the filed date of this order;

16      2.  The dates for the pretrial conference (August 25, 2006) and the trial

17 (November 21, 2006) set in the December 1, 2005, scheduling order are hereby VACATED;

18      3.  Plaintiff's motion to compel further discovery responses/production with

19 respect to defendants Albright, Wetzel and Corrie, filed on April 5, 2006, is granted in part and

20 denied in part: GRANTED as to requests for production nos. 6 and 12, to the extent that

21 defendants are directed to produce to the court for in camera review, within thirty days, the

22 documents as detailed above in bold; DENIED as to any other requests.

23      4.  Plaintiff's motion to compel answers to requests for admissions and

24 interrogatories from defendants Albright, Wetzel and Corrie, filed on May 8, 2006, is denied.

25 \\\\\

26 \\\\\

1      5.  Plaintiff's September 20, 2006 motion for the appointment of counsel is

2  denied.

3  DATED: 10/20/06                              /s/ Gregory G. Hollows

4                                               GREGORY G. HOLLOWS
                                               UNITED STATES MAGISTRATE JUDGE
5
   GGH:009
6  voth2103.31ac+