IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN D. VOTH,

        Plaintiff,                    No. CIV S-04-2103 LKK GGH P

    vs.

T. ALBRIGHT, et al.,

        Defendants.          FINDINGS AND RECOMMENDATIONS

_____/

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court is the motion for summary judgment filed on 5/14/08 by defendants Gooler, Leon and Long, to which plaintiff filed his opposition, on 5/27/08. Defendants' reply, filed on 5/28/08, simply states that defendants submit the motion on their moving papers.

"Final" Amended Complaint[1]

        While this action was originally filed on October 6, 2004, it now proceeds on his "final" (or second) amended complaint, filed on November 7, 2006, which defendants answered

---

[1] The court borrows from a previous order, filed on 3/07/08, for its summary of plaintiff's allegations. See Order, filed on 3/07/08, pp. 1-5.

1

on Nov. 9, 2006.

       In the final amended complaint (FnAC), plaintiff alleges that, on October 3, 2003, at around 12:30 a.m., on his way to a friend's residence to provide the friend a ride to his vehicle, plaintiff stopped his Chevrolet Blazer at the corner of Darwin Street and Kathryn Way in the City of Sacramento, then proceeded past the intersection to make a left turn on El Camino Avenue. FnAC, pp. 7-8.  At that point, plaintiff saw the emergency lights on a white police vehicle activate and alleges that, in an attempt to evade police because he had allowed his vehicle registration to expire and was certain his car would be impounded, he sped up and evaded police for about ten minutes until "the 'PIT' maneuver was performed by the pursuit vehicle," forcing plaintiff to a stop on a residential lawn. Id. at 8.  Plaintiff, still trying to escape, attempted to move his vehicle forward onto the street to drive away, at which point another police car rammed the passenger side door, stopping him. Id.

       Plaintiff then exited the Blazer "and took off"; after plaintiff was running, taking several steps away from the vehicle, a K-9 police dog grabbed plaintiff by his upper right thigh, the force of which caused plaintiff to go face first onto the paved street. Id.  Plaintiff writhed in pain while the police dog continued to bite and tug at his upper thigh. Id.  About thirty seconds later, plaintiff was surrounded by "a swarm of deputies." Id.  Defendant Sacramento County Deputy Sheriff Timothy Wetzel arrived first, according to plaintiff, jamming his knee into plaintiff's back, grabbing plaintiff's left arm and twisting it up and around behind plaintiff's back, and striking plaintiff on the back of his head with a metal flashlight, approximately eighteen inches long. Id.  Plaintiff made eye contact with defendant Wetzel; plaintiff screamed out in pain because the blows were so excruciating. Id. at 8-9.

       "Almost simultaneously," four other sheriff's deputies surrounded plaintiff, and shortly thereafter blood began to flow down plaintiff's back and face. Id. at 9.  Defendant Wetzel grabbed plaintiff's right arm, pulling it around and back and fastening handcuffs so tightly that plaintiff screamed loudly for this defendant to stop. Id.  The police dog continued to bite and rip

1  at plaintiff's upper thigh after the handcuffs were secured.  Id.  As the five defendant deputies
2  began kicking and punching plaintiff on his torso and back, plaintiff observed defendant
3  Sacramento County Deputy Sheriff Timothy Albright kneeling to the right of the K-9 police dog,
4  named Stazzo, holding Stazzo's mid-section with both arms, pulling back and forth, tearing at
5  plaintiff's thigh, coaxing the dog to continue its assault, saying: "Good Boy, Good Boy!!"  Id.
6  Plaintiff made eye contact with defendant Albright, begging him to order the dog to stop biting
7  him to no avail; instead defendant Albright responded by smiling as he continued to excite and
8  incite the dog.  Id.  Although plaintiff was not resisting, another officer, whom plaintiff believes
9  to have been defendant Wetzel, was twisting plaintiff's arms up as plaintiff lay face down, still in
10 Stazzo's grasp.  Id.  Only after one of the officers yelled "Blood!  Blood!" did defendant Albright
11 order the dog to "release" plaintiff.  Id.

12          Plaintiff was unsure of who did what but he could feel and hear the defendants,
13 especially the "foul, angry, venomous" epithets shouted about plaintiff by defendant Deputy
14 Gooler, whom he believes is one of those who inflicted kicks and punches upon him as plaintiff
15 lay face-down handcuffed.  FnAC, pp. 9-10, 12.  Defendant Deputy Corrie "stepped up to the
16 plaintiff's head and did a football style drop-kick."  Id. at 10.  Plaintiff was able to make eye
17 contact with this defendant as well.  Id.  Because defendant Deputy Long was riding as a partner
18 in the same vehicle as defendant Corrie, plaintiff assumes defendant Long was involved in the
19 "attack" upon him as well, and believes Long to have kicked and punched him as well during the
20 incident.  Id. at 10, 12-13.  Plaintiff began drifting in and out of consciousness after the kick to
21 the head.  Id.  Plaintiff has also named Deputy Leon as a defendant because his name figures in
22 many of the reports plaintiff has "discovered," and plaintiff avers that defendant Leon was
23 present and was a witness and/or participant in the arrest incident from which plaintiff's
24 excessive force allegations arise.  Id.  Plaintiff alleges that defendants Gooler and Long actively
25 participated in the attack upon him, and that defendant Leon may well have as well.  Id. at 11-13.
26 \\\\\

1    Plaintiff seeks to proceed on a Fourth Amendment claim that his right to be free
2 of excessive, unjustified force during his arrest was violated by defendants. Id. at 10. Plaintiff
3 states that he believes the actions of the defendants were retaliatory, which he conjectures
4 accounts for the alleged viciousness of the attack. Id. at 10-11. He states that what motivated
5 the violence was that the defendants erroneously believed that plaintiff was someone who had
6 escaped them earlier, although plaintiff goes on to say that he was convicted of crimes which he
7 did not commit, which conviction is on appeal. Id. at 11. He claims that a charge against him of
8 assaulting the K-9, Stazzo, was dropped so that the prosecution would not have to allow at trial
9 the gory photos of injuries inflicted upon plaintiff while he was helpless. Id. The court notes, of
10 course, that the circumstances of plaintiff's criminal trial, conviction and appeal, of course, are
11 irrelevant to this civil rights action.

12    Plaintiff was able to obtain color photographs that the Sacramento County
13 Sheriff's Dept. took of him while he was unconscious and bleeding on the ground. Id. Plaintiff
14 alleges that there were additional Sacramento County Sheriff's Dept. close-up photos taken of
15 plaintiff's "gaping wounds" at the U.C. Davis Medical Center, which defendant Leon, who
16 escorted plaintiff to the medical center witnessed. Id. Plaintiff seeks unspecified money
17 damages only, including punitive damages.[2] Id. at 14.

18 Motion for Summary Judgment

19    This motion is brought on behalf of three of the six named defendants on the
20 ground that defendants Gooler, Leon and Long are entitled to judgment as a matter of law
21 because there is no material fact in dispute and no evidence establishes that these defendants used
22 excessive, or any, force against plaintiff. Motion for Summary Judgment (MSJ), pp. 1-8.
23 \\\\\
24 \\\\\
25

26    [2] Plaintiff expressly waives any claim to injunctive relief. FnAC, p. 4.

4

*Legal Standard*

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its

contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On April 25, 2005, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

*Undisputed Facts*

The court deems the following of defendants' "undisputed material facts" in support of their motion as in fact undisputed, either because plaintiff expressly does not dispute them or he claims a lack of sufficient information to be able to do so.[3]  1. On October 3, 2003, at or around 12:30 a.m., plaintiff evaded a marked sheriff's patrol car which had attempted to make a vehicle stop of plaintiff at or near Anna Way in Sacramento.  2. Plaintiff led sheriff's deputies on a prolonged 12-minute vehicle pursuit, at times exceeding 70 miles per hour, running traffic signals and stop signs, through the streets of Sacramento, culminating in a stop by a second PIT maneuver at Maison and Wyant Way. Declaration of defendant Wetzel, ¶¶ 2-3.  4. Plaintiff jumped out of his car, and ran full speed southbound on Wyant Way toward Star Court.  5. Defendant Albright deployed his K-9 who brought plaintiff down in the street at the corner of Wyant Way and Star Court. Plaintiff was taken into custody. Declaration of defendant Albright, ¶¶ 3-5.

6. Sacramento Metropolitan Fire Department responded and treated plaintiff's injuries at the scene.  7. Plaintiff was transported to UC Davis Medical Center for further treatment. Declaration of defendant Leon, ¶ 8.

8. Defendant Long was defendant Corrie's partner and driving the vehicle in which they arrived at the scene of plaintiff's arrest.  9. Upon arrival, defendant Corrie jumped out of their vehicle before defendant Long had come to a complete stop.  13. After plaintiff was cuffed, defendant Long assisted in a "pat-down" of plaintiff for weapons and identification.  14.

---

[3] See Opposition (Opp.), pp. 2-4.

Long obtained plaintiff's identification and returned to his vehicle to run a records check on plaintiff. 15. The records check revealed that plaintiff was a "parolee at large." Declaration of Defendant Long, ¶¶ 3-5, 7.

17. Defendant Todd Gooler arrived at the scene and saw the second PIT maneuver by defendant Wetzel on plaintiff's vehicle, which spun out, after which plaintiff rammed defendant Albright's vehicle and stopped facing Albright's car. Plaintiff then exited his vehicle and ran on Wyant Way toward Star Court with Albright's K-9 in pursuit. Declaration of defendant Gooler, ¶ 3.[4]

23. Defendant Leon also observed but did not assist in the handcuffing of plaintiff. 24. Defendant Leon returned to his patrol vehicle and called for plaintiff's car to be towed. 25. After the Fire Dept. treated plaintiff at the scene, defendant Leon followed the ambulance to the UC Davis [Med Center] Emergency Room, and accompanied plaintiff into the hospital for treatment. 26. While at the hospital, defendant Leon was relieved by an officer from the day shift. 27. Defendant Leon had no physical contact with plaintiff during or after his Oct. 3, 2003, arrest. Leon Dec., ¶¶ 3-9.

*Disputed Facts*

Plaintiff disputes in whole or in part the following of defendants' undisputed facts. 3. After the PIT maneuver spun plaintiff's vehicle around, plaintiff accelerated again and his vehicle proceeded to strike defendant Sergeant Albright's vehicle, bringing plaintiff's vehicle to a stop. Declaration of defendant Albright, ¶ 3. In opposition (p. 2), plaintiff concedes that while he did accelerate and try to escape, he contends that he did not strike defendant Albright's vehicle; rather, he states, defendant Albright's vehicle struck plaintiff's, ramming his vehicle to try to prevent plaintiff from evading arrest, although plaintiff has confused the issue (see DUF

---

[4] Even though it includes a reference to plaintiff's having rammed Albright's vehicle, plaintiff states that he does not dispute defendants' undisputed fact (DUF) no. 17 (Opp., p. 3), on the other hand, he also expressly maintains that he did not ram Albright's vehicle, but that the reverse occurred. Opp., p. 2. and see *Disputed Facts*.

1  no. 17 & footnote 4).

2  　　　　　10.  Defendant Long then parked the vehicle, and since he knew the K-9 was in
3  pursuit of plaintiff, waited by his car until the K-9 was released by defendant Albright.
4  Declaration of defendant Jeffrey Long, ¶ 4.  Plaintiff flatly disputes this assertion, averring that
5  after parking the vehicle, defendant Long, defendant Corrie's partner, ran to assist in the arrest
6  and participated in the violence and excessive force plaintiff alleges was used against him.

7  　　　　　11.  Then defendant Long approached the scene to find plaintiff not complying
8  with the deputies' commands to turn over for cuffing.  Long Dec., ¶ 4.  Plaintiff disputes this,
9  stating that he was attempting to comply but was being kicked and hit with boots and fists, as
10 well as with at least one flashlight.  Opp., pp. 2-3.

11 　　　　　12.  Defendant Long heard several commands given which were not complied
12 with by plaintiff.  Long Dec., ¶ 4.  Although plaintiff omitted reference in his opposition to this
13 specific fact set forth by defendants as undisputed, in light of his contention vis-à-vis no. 11,
14 immediately above, his omission appears to have been inadvertent and the court will deem this
15 fact disputed.

16 　　　　　16.  Other than the pat-down to obtain plaintiff's identification, defendant Long
17 had no other physical contact with plaintiff during or after his arrest on October 3, 2003.  Long
18 Dec., ¶ 7.  Plaintiff disputes this representation, maintaining that defendant Long assisted his
19 partner, defendant Corrie, as the lead and first contact officers, in the excessive use of force in
20 the arrest.  Opp., p. 3.

21 　　　　　18.  Defendant Gooler was also a K-9 officer at the time.  Since Albright had
22 already released his K-9 to chase plaintiff, Gooler remained at his vehicle with his K-9 until
23 Albright's K-9 was in pursuit.  19.  Defendant Gooler observed the take-down of plaintiff by
24 Albright's K-9 and the arrest and cuffing of plaintiff, but did not participate in the arrest.
25 Declaration of defendant Todd Gooler, ¶¶ 3-6.  Plaintiff does not dispute that defendant Gooler
26 was a K-9 officer, but he does dispute Gooler's declaration that he remained at his vehicle and

asserts that indeed none of the officers did; he maintains that all of the responding and pursuit officers observed the takedown and physically participated in plaintiff's arrest. Opp., p. 3. While the court notes that defendant Gooler does not assert that he remained at his vehicle the entire time, only stating that he remained there until defendant Albright's K-9 was in pursuit, Gooler does state that he did not participate in the arrest, which plaintiff adamantly disputes.

20. At one point, defendant Gooler believes he may have attempted to release the K-9 from plaintiff but retreated from doing so because defendant Albright was the K-9's handler. Gooler Dec., ¶ 4. Although purportedly attempting to dispute this point, plaintiff actually seeks to highlight it as a form of an admission by defendant Gooler that is proof that this defendant was close enough to do have attempted to release the K-9, which would be in closer proximity than would have been afforded him if he were just standing by his vehicle. Opp., p. 3.

21. Defendant Gooler had no physical contact with plaintiff during or after his Oct. 3, 2003, arrest. Gooler Dec., ¶ 6. Plaintiff disputes this representation, maintaining that defendant "Gooler had serious, painful, physical contact with plaintiff"; plaintiff distinctly remembers Gooler yelling foul, vulgar and degrading language at him close by. Opp., pp. 3-4.

22. Defendant David Leon arrived on the scene and after exiting his vehicle observed the K-9 hold on plaintiff and plaintiff holding the dog by the neck. Declaration of defendant David Leon, ¶¶ 3-4. Plaintiff disputes only the portion of this statement asserting that Leon observed plaintiff holding the dog by the neck. Plaintiff maintains this is physically impossible by the way the K-9 had hold of plaintiff's lower extremities. He also asserts that the K-9's hold on him remained until his handler released him. Opp., p. 4.

28. Defendants Long, Gooler and Leon observed no excessive force used against plaintiff by any other officer at the scene of plaintiff's arrest. Long Dec., ¶ 6; Leon Dec., ¶ 10; Gooler Dec., ¶ 7. In opposition, plaintiff states that while only defendants Gooler and Long made physical contact with him, all of the defendants witnessed, if not participated in, the use of excessive force to arrest plaintiff, with the exception of defendant Leon. Opp., p. 4.

*Discussion*

*Legal Standard*

The Supreme Court has long held that claims of excessive force by law enforcement arising in a § 1983 action "in the course of an arrest ... of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness standard...." Graham v Connor, 490 U.S. 386, 395, 109 S. Ct. 1865, 1871 (1989).[5]  Police may, under the Fourth Amendment,[6] "use only such force as is objectively reasonable under the circumstances." LaLonde v. County of Riverside, 204 F.3d 947, 959 (9th Cir. 2000).

> Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests'" against the countervailing governmental interests at stake. Id., at 8, 105 S.Ct., at 1699,[7] quoting United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983).  Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.  See Terry v. Ohio, 392 U.S., at 22-27, 88 S.Ct., at 1880-1883.  Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L. Ed.2d 447 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.  See Tennessee v. Garner, 471 U.S., at 8-9, 105 S.Ct., at 1699-1700 (the question is "whether the totality of the circumstances justifie[s] a particular sort of ... seizure").

Graham v Connor, supra, at 396, 109 S. Ct. at 1871-72.

---

[5] By contrast, a convicted prisoner's excessive force claims are analyzed under an Eighth Amendment standard.  Graham v Connor, supra, at 394, 109 S. Ct. 1871, citing Whitley v. Albers, 475 U.S. 312, 318-326, 106 S.Ct. 1078, 1083-1088 (1986).

[6] "[T]he Fourth Amendment... guarantees citizens the right 'to be secure in their persons . . .against unreasonable ...seizures' of the person." Graham v Connor, supra, at 394, 109 S. Ct. 1871.

[7] Tennessee v. Garner, 471 U.S. 1, 105 S.Ct. 1694 (1985).

The court observes that this motion is supported and opposed only by the sworn declarations of the defendants, or in the case of plaintiff, by an opposition to the truth of which he submits a verification submitted under penalty of perjury. Defendants Leon, Long and Gooler maintain that none of the three of them had any physical contact with plaintiff during the "take-down," with defendant Long only assisting in a "pat-down" for weapons and identification of plaintiff after he was cuffed. MSJ, pp. 2-3, 7. Moreover, these defendants aver that they did not witness any excessive force used by any of the defendants against plaintiff, thus plaintiff's claim that these defendants failed to protect him from such force is baseless. MSJ, p. 7. Plaintiff maintains that defendants Long and Gooler did take active part in his arrest, while he seeks to hold defendant Leon liable for, at most, witnessing the arrest and failing to try to stop the alleged excessive use of force. Opp., pp. 9-10.

### *Defendant Leon*

Both in the final amended complaint and in his opposition herein, plaintiff is at best tentative with regard to this defendant's involvement. Indeed, plaintiff explicitly excepts defendant Leon from those whom he claims actively participated in the arrest. See Opp., pp. 4, 9-10. However, plaintiff disputes defendant Leon's representation that the plaintiff had hold of the K-9 by the neck and further seeks to implicate this individual for failing to prevent or for not stopping the excessive force he alleges was used against him by the other defendants. In doing so, plaintiff does raise a genuine issue of material fact as "[p]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000)[internal citation omitted]. Viewing the evidence in the light most favorable to plaintiff, the court finds that the motion should be denied as to this defendant.

### *Defendants Long and Gooler*

Regarding defendants Gooler and Long, while as to these defendants as well, plaintiff produces nothing beyond his sworn statement (notwithstanding his vague assertion that

Case 2:04-cv-02103-LKK-GGH Document 93 Filed 02/12/09 Page 13 of 14

"police reports" corroborate his position, no part of which he includes or specifically references in support of his opposition) to dispute defendants' material fact assertion that these defendants did not have physical contact with him during the arrest, other than defendant Long's undisputed pat-down for weapons and identification after plaintiff was hand-cuffed, the same can be said for the evidence defendants produce to support their undisputed material facts. In other words, the court is faced with competing sworn declarations, the credibility of which this court may not attempt to determine on a motion for summary judgment. Bator v. State of Hawaii, 39 F.3d 1021, 1026 (9th Cir. 1994) (district court may not weigh conflicting evidence or make credibility determinations at the summary judgment stage); Musicke v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990). On this showing, and taking the evidence in the light most favorable to plaintiff, as the court must on this summary judgment motion, it is evident that a genuine issue of material fact remains in dispute with regard to whether or not defendants Gooler and Long actively engaged in any excessive force against plaintiff during the arrest at issue. The court must recommend denial of the motion as to these two defendants as well.

Accordingly, IT IS HEREBY RECOMMENDED that the motion for summary judgment, filed on 5/14/08 (Docket # 90), by defendants Gooler, Leon and Long be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

\\\\\
\\\\\
\\\\\
\\\\\

1 that failure to file objections within the specified time may waive the right to appeal the District
2 Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3 DATED: 02/12/09

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

GGH:009
voth2103.msj